## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

1.      Your Affiant, Special Agent Erik Bass, with the United States Department of Justice, Federal Bureau of Investigation (FBI), am currently assigned to the San Juan Division, Caribbean Corridor Strike Force.  I have been an FBI Special Agent since July 2011.  As a Special Agent of the FBI, I am authorized to investigate violations of the laws of the United States, and I am a law enforcement officer with authority to execute arrest and search warrants under the authority of the United States.  My training consisted of 21 weeks of New Agent Training classes during which I received instruction on various aspects of federal investigations. During my training to become a Special Agent, I have studied a wide variety of Criminal and National Security investigations.  Since my assignment with the CCSF, I have participated in the investigations involving Transnational Organized Crime in the District of Puerto Rico.  Prior to being assigned to the CCSF, I was assigned to the Santa Clara County Violent Gang Task Force (SCCVGTF), San Francisco Division, San Jose Resident Agency.  Since my assignment with the SCCVGTF, I participated in the investigation of violent and reactive crime, Hispanic gangs, Mexican Drug Trafficking Organizations, and Asian organized crime in the Northern District of California.

2.      As a Special Agent, I am responsible for enforcing Title 46, United States Code, Section 70503 violations to include Conspiracy and Possession with Intent to Distribute a Controlled Substance Onboard a Vessel Subject to Jurisdiction of the United States.  While employed in my current assignment, I have participated in the execution of arrest and search warrants involving offenses pertaining to the distribution of illegal narcotics.  I have participated in numerous local and federal search warrants and arrests involving alleged narcotics trafficking, and I have participated in numerous investigations of narcotics traffickers.

3.      Prior to becoming a Special Agent for the FBI, I attended the Sarasota Criminal Justice Academy and received my Florida state law enforcement certification.  I worked for approximately two (2) years with the North Port Police Department and five (5) years with the Sarasota Police Department.  In these positions, I conducted uniform neighborhood patrol,

responded to calls for service, and made misdemeanor and felony arrests.  While at the Sarasota Police Department, I was a member of the departments' Street Crime Unit where I conducted surveillances, undercover and decoy operations, fugitive investigations, narcotics investigations, and gang investigations.  I also received formal training in narcotics and dangerous drug investigations, current drug trends, airport narcotics investigations, and clandestine laboratory investigations.  I received a Bachelor of Science Degree from Appalachian State University.

4.     I have interviewed drug dealers, drug users, and knowledgeable confidential informants about the lifestyles, appearances, and habits of drug dealers and users.  I have become familiar with the manner in which narcotics traffickers smuggle, package, transport, store and distribute narcotics, as well as how they collect and launder drug proceeds.  I am also familiar with the manner in which narcotics traffickers use telephones, cellular telephone technology, intentionally vague language, coded communications and slang-filled conversations, false and fictitious identities, and other means to facilitate their illegal activities and to thwart law enforcement investigations.  I have had training on, and discussions with other law enforcement personnel about the packaging and preparation of narcotics, the distribution methods of illegal narcotics traffickers, and the security measures that narcotics traffickers often employ.  I have also examined documentation of various methods by which cocaine, methamphetamine, marijuana, and other illicit drugs are smuggled, transported and distributed.  I have participated in surveillance of narcotics traffickers.  During surveillance, I have personally observed narcotics transactions, counter-surveillance techniques, and the ways in which narcotics traffickers conduct clandestine meetings.  I have also participated in investigations that involved the interception of wire communications.

5.     The statements contained in this affidavit are based, in part, on my training and years of investigative experience, and my personal participation in this investigation.  The statements contained in this affidavit are sometimes based on information provided by other FBI Special Agents, or other members of the Caribbean Corridor Strike Force which consist of the FBI, Drug Enforcement Administration (DEA), Homeland Security Investigations (HSI), United States Coast Guard (USCG), Internal Revenue Service (IRS) and the United States Attorney's

Office (USAO).

6.      Because of my personal participation in this investigation, and because of information provided to me by other agents and officers, and my personal observations, I am familiar with the facts and circumstances of this investigation.  My experience in investigating drug offenders, my education, my conversations with senior drug agents and chemist, and my specialized training formed a basis of the opinions and conclusions set forth below which I drew from the facts set forth herein.

## SUMMARY OF THE INVESTIGATION

7.      On March 1, 2016, a United States Coast Guard (USCG) law enforcement detachment team (LEDET) on board a Dutch navy ship (HNLMS DE ZEVEN PROVINCIEN) was on routine patrol in the Caribbean and encountered an 80-ft Fishing Vessel (F/V) 140NM northeast of Aruba navigating eastbound.  HNLMS DE ZEVEN PROVINCIEN began approaching the F/V and almost immediately the F/V began jettisoning packages overboard.  The USCG Boarding Team captured video footage of the crew jettisoning the contraband.



8.      HNLMS DE ZEVEN PROVINCIEN shifted tactical control to US Coast Guard District 7 (D7), and launched two rigid-hulled inflatable boats (RHIB) to intercept the F/V.  One of the RHIBs arrived where the packages were jettisoned and recovered approximately 19 packages of contraband.  The second RHIB went alongside the vessel and conducted right of approach (ROA) questioning.  The Captain was very hesitant when answering questions regarding his homeport, which was later identified to be St. George, Grenada.  The Captain advised their purpose of the voyage was, "transiting" and refused to provide the last port of call, which was later identified to be Grenada.  There was no fishing gear on deck or catch reported.

9.      The Captain made a verbal claim of Grenada nationality for the vessel.  D7 sent an action request to enact the United States-Granada (US/GD) bilateral agreement.  Grenada confirmed registry of the vessel CAPTAIN RICHARDS. The boarding team completed the ISS, IONSCANs and volumetric and no further contraband was discovered onboard the vessel.  With no further reasonable suspicion, the LEDET team completed the boarding.  Two of the recovered packages NIK-tested positive for marijuana. The reported weight of the contraband that was recovered was approximately 918 pounds.

10.     The individuals on-board the F/V were identified as: Michael Anthony Trapp (GUYANA), DOB June 15, 1962, Raymond Alexander Garraway (GUYANA), DOB 07/24/1966, Cordwell Nathaniel Bennett (JAMAICA), DOB July 19, 1971.  All three individuals and the contraband were transferred to a USCG cutter to be transported to the District of Puerto Rico for prosecution.

11.     On March 11, 2016, USCG Cutter Heriberto Hernandez moored at the port in Coast Guard Sector San Juan, La Puntilla, Puerto Rico.  U.S. Customs and Border Protection (CBP) and special agents from the Caribbean Corridor Strike Force (CCSF) took custody of the contraband and the individuals on-board the F/V.

12.     The Port of Coast Guard Sector San Juan, La Puntilla, Puerto Rico was the first point of entry where the defendants entered the United States following the commission of the narcotics offense.

--------------------------------------------------------------------------------------------------------

---------------------------------------continues in the next page---------------------------------------

--------------------------------------------------------------------------------------------------------

13.   In my training and experience, and facts concerning this investigation I believe that sufficient probable cause exist to show that Michael Anthony Trapp (GUYANA), DOB June 15, 1962, Raymond Alexander Garraway (GUYANA), DOB July 24, 1966, Cordwell Nathaniel Bennett (JAMAICA), DOB July 19, 1971 have committed the following violation of Federal Laws: Conspiracy to Possess with Intent to Distribute **one hundred (100) kilograms** or more of a mixture or substance containing a detectable amount of **marihuana**, a Schedule I, Narcotic Drug Controlled Substance, on Board a Vessel Subject to the Jurisdiction of the United States, in violation of Title 46, United States Code, Sections 70502(c)(1)(C), 70503(a)(1), 70504(b)(1), 70506(a)(b).

I hereby declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.

**ERIK BASS**
Special Agent
Federal Bureau of Investigations

Sworn and subscribed to before me this 11th day of March 2015.

**CAMILLE VELEZ-RIVE**
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF PUERTO RICO